See also the next case.


## Nice, Appellant, *v.* Walker.

[Marked to be reported.]

*Mechanics' liens—Contract—Covenant not to file liens.*

In order to prevent a contractor or subcontractor from filing a lien against a building, there must be an express covenant against liens, or a covenant resulting as a necessary implication from the language employed; and the implied covenant should so clearly appear, that the mechanic or material man can understand it without consulting a lawyer as to its legal effect. If a contract is so worded as to be fairly subject to another construction, it is a sufficient reason why it should not be held to bar the right of the subcontractor to file a lien.

A building contract provided as follows: " The owner will not in any manner be answerable or accountable for any loss or damage that shall or may happen to the said works, or any part or parts thereof, respectively, or for any of the materials or other things used and employed in finishing and completing the said works. The said parties of the second part agree to take, use, provide and make all proper, necessary and sufficient precautions, safeguards and protections against the occurrence or happening of any accidents, injuries, damages, or hurt to any person or property during the progress of the entire work, and for all such accidents, injuries, damages or hurt the said parties of the second part alone to be responsible, and not the said party of the first part, or the architect; it being agreed that the work to be done shall be entirely under the control of the parties of the second part, except so far as provision is herein made for the instruction thereof by the architect." *Held,* that the contract did not contain either an express covenant against liens, or any such implied covenant as to deprive a subcontractor of his right to lien the building.

If it is desired to prevent liens from being filed against a building, all that it is necessary to say in the contract is : " No lien shall be filed against the building by either the contractor or subcontractor."

Authorities relating to covenants against liens considered, and Dersheimer v. Maloney, 143 Pa. 532; Tebay v. Kirkpatrick, 146 Pa. 120, and Bolton v. Hey, 148 Pa. 156, overruled.

Argued Feb. 2, 1893. Appeal, No. 272, Jan. T., 1893, by plaintiff, William Nice, Jr., from judgment of C. P. Mont-

gomery Co., June T., 1891, No. 13, M. L. D., on verdict for defendants, Alpheus M. Walker et al.  Before PAXSON, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

Scire facias sur mechanics' lien.

The facts appear by the opinion of the Supreme Court.

At the trial, before WEAND, J., the court gave binding instructions for defendant. [1]

Verdict and judgment for defendant.  Plaintiff appealed.

*Error assigned* was, (1) instruction, as above, quoting it.

*Edward Saunders Dixon, B. E. Chain* with him, for appellant. —It was never intended by the agreement in question to deprive the subcontractor of the right to lien, and the agreement by its terms has not deprived him of this right.

The word " owner " in the contract, considered in connection with the entire contract, certainly cannot be construed to mean building; and as it does not appear anywhere in the contract that liens shall not be filed, we have no right to infer it, and thereby deprive this plaintiff of his statutory right to file a lien : Lloyd v. Krause, 29 W. N. 430 [147 Pa. 402].

*De Forrest Ballou, Henry M. Brownback* with him, for appellee, relied upon Benedict v. Hood, 134 Pa. 289 ; Schroeder v. Galland, 134 Pa. 277 ; Dersheimer v. Maloney, 143 Pa. 532 ; Tebay v. Kirkpatrick, 146 Pa. 120.

OPINION BY MR. CHIEF JUSTICE PAXSON, February 13, 1893:

This action was a scire facias sur mechanics' lien in the court below.· The learned judge held that it was ruled by Dersheimer v. Maloney, 143 Pa. 532, as appears by the following extract from his charge to the jury: " It has been ruled by the Supreme Court in the case of Dersheimer v. Maloney, 143 Pa. 532, which was a precisely similar proceeding, in which these precise words occurred, that this was a covenant against filing any lien, or which would bar any claim either against the owner or his property, and I am bound to rule this case in the light of that decision."

It is manifest there is some confusion in the professional mind as to the line of cases commencing with Schroeder v. Galland, 134 Pa. 277, in regard to the right of a subcontractor to file a mechanic's lien, and if any portion of this confusion

is justly chargeable to this court we cheerfully accept our share of the blame. It may be that some of the cases will have to be slightly modified. In any event it seems neccessary to review this line of cases to the extent at least of seeing just where we stand, and laying down a rule which will leave nothing in doubt as to the future.

In Long v. Caffrey, 93 Pa. 526, the contractor for the erection of the building stipulated in writing with the owner that he would not file a mechanic's lien against said building, and we held that he was bound by his contract. This case was followed by Scheid v. Rapp, 121 Pa. 593, in which the contractor covenanted " for himself, his heirs, executors and administrators, that he will not suffer or permit to be filed . . . . any mechanic's lien or liens against the said building for the period of six months after its completion." The lien in this case, as in Long v. Caffrey, was filed by the contractor himself, and we held, as in that case, that he was debarred by his own covenant from filing the lien.

In Schroeder v. Galland, supra, we went one step further, and held that where the contractor had covenanted with the owner not to file a lien, nor to permit liens to be filed by others, the subcontractors were bound by the covenant of the contractor with the owner, and, as he could not file a lien, they could not. This was an inevitable and logical conclusion from the doctrine laid down in the prior cases. As was held in Schroeder v. Galland, the only connection between the owner and the subcontractor, being through and by means of the contract between the owner and the principal contractor, the subcontractor is chargeable with notice of all its terms and stipulations, and is bound thereby. He cannot have the benefits of the builder's contract without accepting its conditions. The only ground upon which the contractor can bind the building for either materials or labor is by virtue of the authority delegated to him by the owner, and where no such authority is delegated, but, on the contrary, is expressly withheld, and he covenants that no liens shall be filed against the building, he cannot file a lien himself nor can his subcontractors do so.

In a per curiam opinion, filed at the commencement of this term, and which has not yet been reported [the preceding case], it was said in substance that the principle intended to

be decided in Schroeder v. Galland, was, that the subcontractor cannot file a lien where the contractor has expressly covenanted not to do so, or where such covenant appears by necessary implication from the contract itself. It is believed that the words, " necessary implication " have not been understood as we intended them to be, and that most of the confusion arising in this class of cases grows out of this misunderstanding. It is possible we have not been sufficiently explicit upon this point. Hence, we have had case after case, in which the contention has been, whether the peculiar language of the contract between the owner and the contractor amounts to a covenant not to lien a building. If I am right in this it is quite time that the law upon this subject should be defined so clearly that it cannot readily be misunderstood. It should be so plain that every mechanic and material man, though of limited education, can understand it at a glance, and not be compelled to submit its interpretation to a lawyer, with the risk of a decision against him in the court of last resort.

To illustrate my meaning upon this subject I will now consider briefly the particular provisions of the contract in Schroeder v. Galland, and the cases which have followed it, so far as they have been reported.

In Schroeder v. Galland, the contract between the owner and the principal contractor stipulated that the building should be built, finished, and delivered over to the owner " free of all liens and incumbrances or any claims whatever that might arise under any action of the party of the second part or his legal representatives under this contract." It was further provided, as is usual in such contracts, that all wages of artisans and laborers and all persons furnishing materials to the contractor on account of the contract, shall be paid by the contractor. These are the essential features of the contract, and we held in that case that the stipulation against liens was not only obligatory upon the principal contractor, but also upon the subcontractors, and that they could not recover.

In Benedict v. Hood, 134 Pa. 289, the agreement between the contractor and owner contained an express covenant against liens in the following words: " And it is further agreed that the party of the first part will not at any time suffer or permit any lien, attachment, or other incumbrance, under any law of

this state, or otherwise, by any person or persons whatsoever, to be put or remain on the building or premises, into or upon which any work is done, or materials are furnished under this contract, for such work and materials, or by reason of any other claim or demand against the party of the first part; and that any such lien, attachment, or other incumbrance, until it is removed, shall preclude any or all claim and demand for any payment whatsoever, under or by virtue of this contract."

This is sufficiently explicit, and does not need comment. It will be noticed that the covenant is much stronger than in Schroeder v. Galland, the difference being that in the one case there is an express covenant not to file liens, while in the other the covenant is only to be implied from language about which laymen might differ, and, possibly, lawyers.

In Murphy v. Morton, 139 Pa. 345, it was held that a covenant by the contractor for the erection of a building, that, before the final payment shall become due, he will furnish releases from all persons having a right of lien, will not protect the owner from mechanics' liens for work done or materials furnished in good faith by subcontractors and material men, and was not a covenant on the part of the contractor not to file a lien. On the contrary, there is a recognition of the right of subcontractors and material men to lien the building. The provision of the contract that before the contractor shall receive his last payment he shall furnish releases from all persons entitled to file liens, is a recognition of the right to file them.

In Willey v. Topping, 146 Pa. 427, the original contract for the erection of the building contained no prohibition of mechanics' liens, and we held that a subsequent release of his right did not prevent the filing of a lien by a material man, though the materials were furnished after the release was delivered; that while a subcontractor is bound by the terms of the original contract between the owner and the contractor, he is not bound to inquire from time to time whether such contract has been changed or modified. To the same point is Cook v. Murphy, 150 Pa. 41.

In Moore v. Carter, 146 Pa. 492, it was held that a stipulation that the contractor shall furnish releases from subcontractors, etc., before the last instalment of the contract price shall be paid, will not preclude the filing of a mechanic's

lien by the contractor in advance of the furnishing or procuring of such releases.

In Lloyd v. Krause, 29 W. N. 429, [147 Pa. 402,] the clause in the contract, which was relied upon to defeat the claim, was as follows : " Neither shall there be any legal or lawful claims against the party of the first part in any manner, from any source whatever, for work or materials furnished on said work." It was held that these words did not contain a stipulation that there shall be no mechanics' liens filed against the building, nor that the building shall be delivered to the owners free from any liens or incumbrances. It will be noticed, however, that this provision is at least as strong as the one in Schroeder v. Galland, which was held sufficient to prevent the subcontractor from filing a lien. In that case the contract was that the building should be delivered to the owner " free of all liens and incumbrances that might arise under any action of the party of the second part or his legal representatives under this contract."

In Bolton v. Hey, 30 W. N. 29, [148 Pa. 156,] the building agreement, after stipulating for the time and modes of payment, provided as follows : " It is further agreed that the said building shall be built, finished and delivered over to the party of the first part free of all liens and incumbrances, or any claims whatever that might arise under any action of the party of the second part, or his legal representatives under this contract, and that the provisions of the ninth section of this contract shall not be taken to subject the said building to any liability for the payment for labor or materials furnished in or about the erection thereof, or the said party of the first part to any liability therefor other than the payment of the contract price to the said party of the second part as therein provided."

It was held that the above words constituted an implied covenant against filing liens, and that a subcontractor could not recover against the owner for materials furnished. It will be noticed that there is something more here than an agreement to deliver the building to the owner free of all liens and incumbrances. There is a further stipulation that the provisions of the ninth section of the contract shall not be taken to subject the building to any liability for the payment of labor or materials furnished in or about the erection thereof.

While a lawyer may be able to find in the language quoted an implied covenant against filing liens, the mechanic or material man might be misled thereby. The covenant to deliver the building free of incumbrances is not a covenant against filing liens, as we have said in a number of cases, while the subsequent provision, that nothing in the contract shall subject the building to liens for labor or materials, is not free from criticism. It is not the contract that subjects the building to liens, but it is the law which renders it so liable, and the contract should have expressly prohibited the filing of any liens. This case stands upon the very border, and goes further in sustaining an implied covenant against filing liens than we are now prepared to go.

In McElroy v. Braden, 152 Pa. 78, there was an express agreement that no liens were to be filed, either by the contractor or subcontractor, and the principal contention was, whether it is necessary that such an agreement should be in writing. The court below held that it was not essential that the stipulation referred to should be in writing, but it must be definite and explicit. This ruling was affirmed by this court. We could not say as a matter of law that the agreement between the owner and contractor must be in writing, although few prudent business men would be willing to trust to the uncertain testimony of witnesses for the details of such an important transaction.

The learned judge below held, as has been already stated, that the case in hand was ruled by Dersheimer v. Maloney, 143 Pa. 532. It remains to consider that case with Tebay v. Kirkpatrick, 146 Pa. 120, which was ruled upon the former case.

The contract in the case in hand, so far as this question is concerned, is substantially the same as in Dersheimer v. Maloney, and was evidently prepared in accordance therewith. The controlling portions of the contract in that case, as we find from the report of it in 143 Pa., is as follows: "Eighty-five per cent will be paid as the work progresses on labor and materials, in monthly payments, according to and upon the estimate of the architect. The proprietor reserves the right to pay bills, deducting fifteen per cent until completion: Provided, that in each case of payment a certificate shall be obtained from the architect; . . . and, provided further, that in each case a cer-

tificate shall be obtained by the contractor from the clerk of the office where liens are recorded, signed and sealed by the clerk, that he has carefully examined the records and finds no liens or claims recorded against said work; neither shall there be any legal or lawful claims against the contractor in any manner, from any source whatever, for work or materials furnished on said works."

"7. The proprietor will not, in any manner be answerable or accountable for loss or damage that shall or may happen to said work or any part or parts thereof respectively, or for any of the materials or other things used and employed in finishing and completing said works; or for injury to any person or persons, either workmen or the public, or for damage to adjoining property." . . .

This was held to be an implied covenant against the filing of liens. That it was a close case may be inferred from the language of this court, where it was said: " While the language of the contract in that case (Schroeder v. Galland) differs from that employed in the agreement before us, we have no doubt the parties intended to provide against the filing of liens; and while they have not done so in express terms, we think that by fair intendment the words used necessarily include both liens and personal liabilities. The owner is not to " be answerable or accountable . . . in any manner " for any liabilities, etc. If this is not an implied covenant against filing liens, then the owner is " answerable or accountable " in at least one mode or manner; not liable in person, it is true, but in property, which is equally efficacious. Again, in the second clause, the inhibition is: " neither shall there be any legal or lawful claim against the contractor in any manner, from any source whatever for work or materials. "

While it may be true that the parties to this contract intended to provide against the filing of liens by subcontractors, the stronger light which has been thrown upon this question leads us to the conclusion that it is not as explicit as it might and ought to have been. Nor do we attach much importance to the words that there shall not be any legal or lawful claim against the contractor. It was not in the power of the owner or contractor, or of both of them, to prevent claims being brought against the contractor. It is the owner, or rather his

building, which is intended to be protected by this and similar covenants.

The other ground, upon which this decision was based, is, that the owner is not to "be answerable or accountable . . . . in any manner" for any of the materials, etc., is not free from criticism. An examination of that clause of the contract shows that it is at least capable of another interpretation, and that the owner was stipulating, not that he would not be accountable for materials furnished to the building, but, that he would not be responsible "for loss or damage that shall or may happen to said work, or any part or parts thereof respectively, or for any of the materials or other things used and employed in finishing or completing said work ; or for injury to any person or persons, either workmen or the public, or for damage to adjoining property."

We think this language may fairly be interpreted to be a covenant that the owner shall not be responsible for any loss occasioned by the injury or destruction of the building, or the materials composing it, during the erection and construction. And the further covenant, that the owner will not be responsible to any person or persons, either workmen or the public, or for damage to adjoining property strengthens this view.

The essential portions of the contract in the case in hand are as follows : "VI. The owner will not in any manner be answerable or accountable for any loss or damage that shall or may happen to the said works, or any part or parts thereof, respectively, or for any of the materials or other things used and employed in finishing and completing the said works.

"VII. The said parties of the second part agree to take, use, provide and make all proper, necessary and sufficient precautions, safeguards and protections against the occurrence or happening of any accidents, injuries, damages or hurt to any person or property during the progress of the entire work, and for all such accidents, injuries, damages or hurt the said parties of the second part alone to be responsible, and not the said party of the first part, or the architect ; it being agreed that the work to be done shall be entirely under the control of the parties of the second part, except so far as provision is herein made for the instruction thereof of the architect."

The two paragraphs above quoted must be read together.

Thus considered, it is a covenant that the owner will not be responsible for any "loss or damage" that shall or may happen to the said building or to the material or other things used and employed in erecting it, and that the contractor shall be responsible for all accidents, injuries, damages or hurt to any person or property during the progress of the entire work.

That the contract in question is fairly subject to this construction is a sufficient reason why it should not be held to bar the right of the subcontractor to file a lien. An examination of this class of cases creates a feeling of surprise that if parties intended to covenant against the filing of liens, they should employ such ambiguous language, when three lines, clearly expressed, would remove all doubt upon this subject. It is sufficient to say that no lien shall be filed against the building by either the contractor or subcontractor.

Tebay v. Kirkpatrick, supra, was decided upon Dersheimer v. Maloney, supra, and the contracts in the two cases are substantially similar. The criticisms of the latter case apply equally to the former.

We are of opinion that in order to prevent the contractor or subcontractor from filing a lien against the building, there must be an express covenant against liens, or a covenant resulting as a necessary implication from the language employed; and that the implied covenant should so clearly appear, that the mechanic or material man can understand it without consulting a lawyer as to its legal effect.

In the case in hand there is no such express covenant, nor is such covenant to be reasonably implied from the terms of the contract. It was, therefore, error to instruct the jury to render a verdict for the defendant.

The judgment is reversed, and a venire facias de novo awarded.

Cf. annotation of Taylor v. Murphy, 30 W. N. 27, and 31 Am. L. Reg. 390. See also the next case.