# Bithell v. Diven, Appellant.

*Mechanic's lien—Covenant against lien—Subcontractor.*

A covenant by a contractor in a building contract that he will not allow any mechanic's lien to be filed by a subcontractor, and that he will furnish a bond with surety to indemnify the owner against such liens, is not an absolute covenant that no subcontractor shall file a lien, but simply relates to the contractor's own future course of dealing.

In order to prevent a contractor or subcontractor from filing a lien there must be an express covenant against liens, or a covenant resulting as a necessary implication from the language employed; and the implied covenant must so clearly appear that the mechanic or material-man can understand it without consulting a lawyer as to its legal effect.

Argued April 23, 1901. Appeal, Nos. 155, 156 and 157, April T., 1901, by defendants, from judgment of C. P. No. 2, Allegheny Co., Oct. T., 1899, Nos. 656, 668 and 669, on verdict for plaintiff in case of F. W. Bithell v. J. A. Diven, Contractor, and James A. Logan, Owner. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Scire facias sur mechanic's lien. Before FRAZER, J.

At the trial it appeared that plaintiff was a subcontractor under a contract between J. H. Diven, contractor, and James A. Logan, owner. The defendant claimed that under the contract a subcontractor had no right to file a lien. The material portions of the contract are quoted in the opinion of the Superior Court.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff. Defendant appealed.

*Error assigned* was in refusing binding instructions for defendant.

*William M. Hall, Jr.,* for appellant.—The contract was sufficient to prevent liens by subcontractors : McCollum v. Messenger, 163 Pa. 608 ; Schroeder v. Galland, 134 Pa. 283 ; Murphy & Diebold v. Morton, 139 Pa. 345 ; Dersheimer v. Maloney, 143 Pa. 532 ; Tebay v. Kirkpatrick, 146 Pa. 120 ; Loyd & Co. v. Krause & Sons, 147 Pa. 402 ; Wilkinson v. Brice, 148 Pa.

153 ; Bolton v. Hey, 148 Pa. 156 ; Taylor v. Murphy, 148 Pa. 340 ; McElroy v. Braden, 152 Pa. 81 ; Nice v. Walker, 153 Pa. 123 ; Murphy v. Ellis, 153 Pa. 133 ; Cresswell Iron Works v. O'Brien, 156 Pa. 172 ; Lucas v. O'Brien, 159 Pa. 535 ; Ballman v. Heron, 160 Pa. 378 ; Waters v. Wolf, 162 Pa. 154 ; Fidelity Mutual Life Assn. v. Jackson, 163 Pa. 208 ; East Stroudsburg Lumber Co. v. Gill, 187 Pa. 27 ; Com. Title Ins. & Trust Co. v. Ellis, 192 Pa. 321.

*James Balph,* with him *R. A. Balph,* for appellee.—The provisions of the contract quoted are almost identical with those contained in the contracts shown in the cases of Cresswell Iron Works v. O'Brien, 156 Pa. 172, Lucas v. O'Brien, 159 Pa. 535, Gordon v. Norton, 186 Pa. 173, Hazleton Plumbing Co. v. Powell, 13 Pa. Superior Ct. 426, and Shannon v. Phila. German Protestant Home for Aged, 16 Pa. Superior Ct. 250.

OPINION BY W. D. PORTER, J., July 25, 1901 :

The appellant has, as required by the rule of this court, correctly stated the question involved in this case : "The sole question is whether the contract duly put of record . . . . is a sufficient 'no lien' contract under the law." The written agreement between the chief contractor and the owner was duly filed of record as required by the statute. The plaintiff was a subcontractor who did work upon the building, and his right to recover is dependent upon the terms of the original contract. The covenants of the contract material to the determination of this question are in this language : "Ninth. And the said party of the second part (the contractor) covenants, promises and agrees that he will not file any mechanic's lien or allow any such mechanic's lien to be filed by any subcontractor, material man or other person against the three dwelling houses and property upon which the three dwellings are built." And "Eleventh. The party of the second part agrees to furnish a bond in the sum of $5,000 of a satisfactory trust company of Pittsburg, Pa., for the full and faithful performance of all the covenants and agreements herein mentioned, and for the protection of the party of the first part against mechanics' liens and all loss and damages of all kinds whatsoever by reason of the failure of the party of the second part to keep

and perform all the covenants and agreements herein mentioned." Do these provisions constitute such a specific covenant against liens by subcontractors as will, under the terms of the Act of June 26, 1895, P. L. 369, operate to defeat the rights of such parties to maintain a lien. It had been held, prior to the enactment of this statute, that the right to a lien was derived from the contract, and that when the principal contractor had covenanted that he himself would not file a lien a subcontractor acquired no greater rights than were possessed by that person under whom he claimed, and as a consequence had no right of lien: Ballman v. Heron, 160 Pa. 377. It had also been decided that in order to prevent the contractor or subcontractor from filing a lien there must be an express covenant against liens, or a covenant resulting as a necessary implication from the language employed; and that the implied covenant should so clearly appear, that the mechanic or material man can understand it without consulting a lawyer as to . its legal effect. If the contract is fairly and reasonably susceptible of any other construction, it will not bar a lien: Murphy v. Morton, 139 Pa. 345; Moore v. Carter, 146 Pa. 492; Loyd v. Krause, 147 Pa. 402; Nice v. Walker, 153 Pa. 123; Murphy v. Ellis, 153 Pa. 133. The purpose of the act of 1895 was to regulate building contracts having as a part thereof a stipulation that no mechanics' liens should be filed against the building. The rights of the principal contractor were unaffected by the legislation, but the right of the subcontractor to file a lien was made secure, unless the contract "shall specifically covenant against such lien by subcontractor or other person," and is executed and recorded in the manner required.

The right of the subcontractor to maintain a lien is in no way dependent upon the existence of such right in the contractor. Parties to a building agreement can, by the contract, deprive a subcontractor of the right to file a lien in no other way than by a specific covenant that no lien shall be filed, which is clearly broad enough to include the claim of such subcontractor within its terms. No ambiguous language, which is reasonably susceptible of any other construction can in such a case be held to comply with the provisions of this statute. In this contract the prohibition of the filing of a lien by the principal contractor is absolute. When the parties came to deal

with the rights of the subcontractor they employed entirely different language. They must be presumed to have been aware of the strict requirements of the act; yet they abandoned the simple and direct covenant by which they wiped out the right of the primary contractor. If they desired to deprive subcontractors of the right of lien, it would have been sufficient to say that no lien shall be filed against the building by any subcontractor. Instead of a specific covenant against liens by subcontractors they incorporated two covenants upon the part of the contractor: 1. Not to allow any mechanics' liens to be filed by any subcontractor, material man or other person; 2. To furnish a bond in the sum of $5,000, with a satisfactory surety, for the protection of the owner against mechanics' liens, etc.

Had the first covenant contained an absolute prohibition of liens, the second would not have impaired its force. Both covenants would have stood, the latter being held to be a protection against possible liens which might be filed without regard to the contract: Morris v. Ross, 184 Pa. 241; Com. Title Insurance and Trust Company v. Ellis, 192 Pa. 321. The difficulty with appellant's position is that the contract did not contain any positive prohibition of liens by subcontractors. The contractor covenanted that he would not allow such liens to be filed, and he gave a bond with surety for the protection of the owner. When a contractor covenants that he will not allow, permit or suffer subcontractors to file liens and that he will furnish a bond with surety to indemnify the owner against such liens, his undertaking relates to his own future course of dealing. He assumes a positive duty. For the contractor to say that he will not allow a subcontractor to file a lien amounts to nothing more than if he had said he would prevent the subcontractor from filing a lien. Either of the covenants would constitute an undertaking on the part of the contractor that he would so deal with the subject-matter of the contract that no subcontractor should file a lien. This was not any absolute covenant that no subcontractor should file a lien and the contract must be interpreted according to the intention of the parties, which is to be ascertained from the entire instrument. The provisions of this contract relating to liens by subcontractors may be fairly construed to mean that it was the intention to protect the owner, not by an absolute pro-

hibition of liens by subcontractors, but by imposing upon the principal contractor the duty of paying such claims before liens were filed, and placing in the hands of the owner a security for his indemnification in case of default by the contractor: Creswell Iron Works v. O'Brien, 156 Pa. 172; Lucas v. O'Brien, 159 Pa. 535; Gordon v. Morton, 186 Pa. 168; Hazelton Plumbing Company v. Powell, 13 Pa. Superior Ct. 426; Shannon v. Phila. German Protestant Home, 16 Pa. Superior Ct. 250.

The contract in this case therefore falls short of the standard established by the act of 1895, and cannot be held to deprive this plaintiff of the right to maintain a lien.

The appeals Nos. 155, 156 and 157 are dismissed, and the several judgments are affirmed.